

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

*************************************

**UNITED STATES OF AMERICA**

v.

**RAFIL DHAFIR,**
**MAHER ZAGHA,**
**AYMAN JARWAN,**
**OSAMEH AL WAHAIDY,**
**HELP THE NEEDY, and**
**HELP THE NEEDY ENDOWMENT, INC.,**

**Defendants.**

**Criminal Action No.**
**5: 03-CR-64 (NAM)**

**Vio:  18 U.S.C. § 371 [1 Count]**
**18 U.S.C. § 1956(h) [1 Count]**
**18 U.S.C. § 1956(a)(2)(A) & § 2**
**[12 Counts]**

**I N D I C T M E N T**



FEB 19 2003

*************************************

## THE GRAND JURY CHARGES THAT:

## COUNT 1

## INTRODUCTION

1.    The International Emergency Economic Powers Act, Title 50, United States

Code, Section 1701, *et seq.* (collectively "IEEPA"), provides authority to the President of the

United States to "deal with any unusual and extraordinary threat, which has its source in

whole or substantial part outside the United States, to the national security, foreign policy,

or economy of the United Sates, if the President declares a national emergency with respect

to such threat."  50 U.S.C. § 1701(a).

2.      The President is authorized, under such regulations as he may prescribe to, among other things, "investigate, regulate, or prohibit – (i) any transactions in foreign exchange, (ii) transfers of credit or payments between, by, through, or to any banking institution, to the extent that such transfers or payments involve any interest of any foreign country or any national thereof, [and] (iii) the importing or exporting of currency or securities."  50 U.S.C. § 1702(a)(1)(A).

3.      In Executive Order 12722, signed August 2, 1990, the President of the United States found that "the policies and actions of the Government of Iraq constitute an unusual and extraordinary threat to the national security and foreign policy of the United States" and declared "a national emergency to deal with that threat."  Executive Order 12722, entitled "Blocking Iraqi Government Property and Prohibiting Transactions With Iraq" generally prohibits trade with Iraq.

a.      Executive Order 12724, carrying the same title and dated August 9, 1990, prohibits certain activities relating to Iraq, including "any commitment or transfer, direct or indirect, of funds, or other financial or economic resources by any United States person to the Government of Iraq or any other person in Iraq."

b.      Each year from 1990 to the present, the sitting President of the United States has issued a "Notice of President of the United States" continuing this national emergency with respect to Iraq.

c.      Executive Orders 12724 and 12722 authorize the Secretary of the Treasury, in consultation with the Secretary of State, to "take such actions, including the promulgation of rules and regulations, as may be necessary to carry out the purposes of this order."

4.      Pursuant to this authority, the United States Department of the Treasury, Office of Foreign Assets Control has promulgated regulations in Title 31 of the Code of Federal Regulations, Part 575 entitled "Iraqi Sanctions Regulations." 31 CFR § 575.201 *et seq.*

a.      No United States individual or organization may, except as authorized, "commit or transfer, directly or indirectly, funds or other financial or economic resources to the Government of Iraq or any person in Iraq." 31 CFR, Subpart B, § 575.210.

b.      According to those regulations, individuals and organizations must obtain a specific license from the Office of Foreign Assets Control to provide donated foodstuffs in humanitarian circumstances and donated supplies intended strictly for medical purposes. 31 CFR §§ 575.205, 575.520, 575.521, 575.525.

c.      The Iraqi Sanctions Regulations further provide that: "[a]ny transaction for the purpose of, or which has the effect of, evading or avoiding, or which facilitates the evasion or avoidance of, any of the prohibitions set forth in this subpart [B] is hereby prohibited.  Any attempt to violate the prohibitions set forth in this part [Iraqi Sanctions Regulations] is hereby prohibited.  Any conspiracy formed for the purpose of engaging in a transaction prohibited by this part is hereby prohibited." 31 CFR § 575.211.

3

## THE CONSPIRACY TO EVADE IRAQI SANCTIONS

5.    Beginning at a time unknown but prior to February 1995, and continuing through the date of this Indictment, in the Northern District of New York, and elsewhere, the defendants,

RAFIL DHAFIR,
MAHER ZAGHA,
AYMAN JARWAN, and
OSAMEH AL WAHAIDY

knowingly and willfully combined, conspired and agreed with each other, and with other persons both known and unknown to the Grand Jury, to commit offenses against the United States, that is knowingly and willfully to violate and evade and attempt to violate and evade Executive Order Numbers 12722 and 12724 and the regulations issued under those Executive Orders and under the International Emergency Economic Powers Act, including the "Iraqi Sanctions Regulations," 31 CFR § 575.201 *et seq.*, by, among other things, transferring, directly and indirectly, funds and other financial and economic resources to one or more persons in the Country of Iraq, contrary to Title 50, United States Code, Section 1701 *et seq.* and 31 CFR § 575.701.

## MANNER AND MEANS OF THE CONSPIRACY

6.    It was a part of the conspiracy that, from in or before 1995, RAFIL DHAFIR and the other defendants, operating under the names HELP THE NEEDY and HELP THE NEEDY ENDOWMENT, INC. (hereinafter collectively referred to as "HTN") in the

4

Northern District of New York and elsewhere, would solicit and collect funds from the public.

    a.    HELP THE NEEDY was an unincorporated association established in or before 1995, purportedly as a charity.

    b.    HELP THE NEEDY ENDOWMENT, INC. was a corporation, incorporated in the State of New York in November 2001, and a successor to the unincorporated association, HELP THE NEEDY.

    c.    Neither HELP THE NEEDY, HELP THE NEEDY ENDOWMENT, INC., nor any individual associated with those entities, obtained the licence required by law to provide humanitarian aid to Iraq.

    7.    It was further a part of the conspiracy that the defendants, in soliciting funds from the public, would make false and misleading representations concerning, among other things, the intended uses of the donations.

    8.    It was further a part of the conspiracy that the defendants would establish a series of bank accounts, using both fictitious corporate and personal identification information, in part, to facilitate and conceal the unlawful transfer of funds to persons in Iraq.

    9.    It was further a part of the conspiracy that, from 1995 until the date of this Indictment, the defendants would deposit contributions to HELP THE NEEDY into accounts in the name of HELP THE NEEDY and after July 2002, of HELP THE NEEDY ENDOWMENT INC., at Oneida Savings Bank.

10.     It was further a part of the conspiracy that, from in or about October 1997, RAFIL DHAFIR would deposit contributions to HTN into an account in the name of HELP THE NEEDY at Key Bank.

11.     It was further a part of the conspiracy that, from 1995 until September 1999, the defendants would arrange to transfer funds from the HELP THE NEEDY account at Oneida Savings Bank into a personal account at Fleet Bank maintained in the name of MAHER ZAGHA.

12.     It was further a part of the conspiracy that from 1995 until September 1999, the defendants would arrange to transfer more than $1,000,000 from the Fleet Bank account maintained in the name of MAHER ZAGHA to an account at the Jordan Islamic Bank in Amman, Jordan held by MAHER ZAGHA.

13.     It was further a part of the conspiracy that, after September 1999, when the account maintained in the name of MAHER ZAGHA was closed by Fleet Bank, the defendants arranged to send over $2,700,000 from the HTN accounts at Oneida Savings Bank and Key Bank to the Jordan Islamic Bank account, by checks made payable to ZAGHA Trading Establishment.

14.     It was further a part of the conspiracy that, from 1995 to the date of this Indictment, the defendants would arrange to transfer money from the ZAGHA account in Jordan to individuals in Iraq.

6

15.     It was further a part of the conspiracy that the defendants took various steps to conceal the nature and scope of the conspiracy and the identity of the conspirators.

## OVERT ACTS

16.     In furtherance of the conspiracy and to effect the objects of the conspiracy, the defendants committed the following overt acts, among others:

a.     On or about November 14, 1995, RAFIL DHAFIR caused an account to be opened at Oneida Savings Bank in the name of "HELP THE NEEDY" by submitting paperwork which used another organization's Employer Identification Number and false personal identification information with respect to the signatories, "Mo Harairi" (for whom a false social security number was used) and "Sam Wahidi" (for whom the social security number of OSAMEH AL WAHAIDY, with an incorrect date of birth, was used).

b.     On or about October 9, 1997, OSAMEH AL WAHAIDY opened an account in the name of HELP THE NEEDY at Key Bank.

c.     On or about March 23,1998, RAFIL DHAFIR deposited a check drawn on the HELP THE NEEDY account at Oneida Savings Bank into the Fleet Bank account in the name of MAHER ZAGHA.

d.     On or about the dates set forth in Counts 3 through 14, each of which are incorporated herein by reference as if set forth in full, as a separate overt act, the funds described in each count were transmitted and transferred from the United States to Jordan for deposit in MAHER ZAGHA's account at the Jordan Islamic Bank in Amman, Jordan.

7

e.      On November 8, 2001, RAFIL DHAFIR telephoned the Oneida Savings Bank to arrange to obtain a check in the amount of $200,000, payable to Zagha Trading Establishment, using a check from the HELP THE NEEDY account signed in the name of OSAMEH AL WAHAIDY, which was obtained later that day by another individual known to the Grand Jury.

f.      On November 8, 2001, OSAMEH AL WAHAIDY went to Key Bank and obtained a check from the HELP THE NEEDY account in the amount of $100,000, payable to Zagha Trading Establishment.

g.      On November 9, 2001, AYMAN JARWAN mailed an express mail envelope to M. Zagha Trading Est., MADI Bldg., Room 201, Second Floor, King Faisal St., Amman, Jordan.

h.      On or about December 24, 2001, RAFIL DHAFIR telephoned the Oneida Savings Bank to arrange to obtain a check in the amount of $200,000 payable to Zagha Trading Establishment, using a check from the HELP THE NEEDY account signed in the name of OSAMEH AL WAHAIDY, which was obtained later that day by another individual known to the Grand Jury.

i.      On or about December 31, 2001, RAFIL DHAFIR arranged to obtain a bank check from Oneida Savings Bank in the amount of $200,000, payable to Zagha Trading Establishment, using a check from the HELP THE NEEDY account signed in the name of OSAMEH AL WAHAIDY.

j.      On or about January 4, 2002, RAFIL DHAFIR sent an express mail envelope to Maher Ghalib Zagha, Zagha Trading Est., MADI Bldg., Room 201, Second Floor, King Faisal St., Amman, Jordan.

k.      On or about September 16, 2002, OSAMEH ALWAHAIDY and AYMAN JARWAN went to Key Bank and obtained a bank check in the amount of $100,000 payable to Zagha Trading Establishment, using a check from the HELP THE NEEDY account.

l.      On multiple occasions including those set forth below, each such occasion constituting a separate overt act, RAFIL DHAFIR directed that money sent from HTN to the Zagha Trading Establishment in Jordan be provided to individuals who were either located in Iraq or who would transport money into Iraq.

(1)    On April 14, 2001 RAFIL DHAFIR e-mailed MAHER ZAGHA directing him to give $100,000 "from the relief" to an individual known to the Grand Jury who was located in Baghdad, Iraq.

(2)    On June 25, 2002, RAFIL DHAFIR e-mailed MAHER ZAGHA directing him to give $20,000 "from the relief" to an individual known to the Grand Jury who was located in Baghdad, Iraq.

(3)    On November 30, 2001, RAFIL DHAFIR e-mailed MAHER ZAGHA directing him to pay "ten thousands" to an individual known to the Grand Jury who was located in Baghdad, Iraq.

9

(4)     On December 22, 2001, RAFIL DHAFIR e-mailed MAHER ZAGHA directing him to pay $5,000 "from the relief" to an individual located in Baghdad, Iraq, and known to the Grand Jury.

(5)     On December 19, 2000, RAFIL DHAFIR directed MAHER ZAGHA to give $13,000 to an individual who was to transfer money into Iraq.

(6)     On December 29, 2000, RAFIL DHAFIR directed MAHER ZAGHA to give $16,500 to an individual who later reported how the money had been distributed in Iraq.

(7)     On or about May 1, 2002, June 1, 2002, July 25, 2002, August 1, 2002, and September 2, 2002, MAHER ZAGHA provided $7,000 (on each occasion) to an individual who distributed at least some of the money in Iraq.

m.     On or about August 8, 2002, a conspirator submitted to the Internal Revenue Service an application for recognition as a tax-exempt charitable organization (Form 1023) dated July 31, 2002, on behalf of HELP THE NEEDY ENDOWMENT, INC., which included a false and misleading representation that HTN was an organization that recently concentrated on aiding the needy in the United States.

All in violation of Title 18, United States Code, Section 371.

10

**THE GRAND JURY FURTHER CHARGES THAT:**

**<u>COUNT 2</u>**

17.    The allegations set out in Count 1 and Counts 3 through 14 are incorporated

herein by reference, as if set forth in full.

18.    Beginning at a time unknown but prior to February 1995 and continuing

through the date of this Indictment, within the Northern District of New York and elsewhere,

the defendants,

RAFIL DHAFIR,
MAHER ZAGHA,
HELP THE NEEDY, and
HELP THE NEEDY ENDOWMENT, INC.

and others known and unknown to the Grand Jury, did knowingly and intentionally conspire

to commit an offense under Title 18, United States Code, Section 1956(a)(2)(A), that is the

knowing transmission and transfer of funds from places in the United States, including

Syracuse, New York, to places outside the United States, including Amman, Jordan and Iraq,

with the intent to promote the carrying on of specified unlawful activity -- that is, the

knowing and willful violation and attempted violation of regulations issued under the

International Emergency Economic Powers Act, including the "Iraqi Sanctions Regulations,"

31 CFR § 575.201 *et seq.*, by, among other things, transferring, directly and indirectly, funds

and other financial and economic resources to one or more persons in the Country of Iraq,

contrary to Title 50, United States Code, Section 1705.

All in violation of Title 18, United States Code, Section 1956(h).

11

## THE GRAND JURY FURTHER CHARGES THAT:

### COUNTS 3 - 10

19.     The allegations set out in Counts 1 and 2 are incorporated herein by reference, as if set forth in full.

20.     On or about the dates specified below, within the Northern District of New York and elsewhere, the defendants,

RAFIL DHAFIR,
MAHER ZAGHA, and
HELP THE NEEDY

transmitted and transferred and caused to be transmitted and transferred funds from a place in the United States to a place outside the United States with the intent to promote the carrying on of specified unlawful activity -- that is, the knowing and willful violation and attempted violation of regulations issued under the International Emergency Economic Powers Act, including the "Iraqi Sanctions Regulations," 31 CFR § 575.201 *et seq.*, by, among other things, transferring, directly and indirectly, funds and other financial and economic resources to one or more persons in the Country of Iraq, contrary to Title 50, United States Code, Section 1705 -- by the following transfers of funds from accounts of HELP THE NEEDY at the banks in the United States listed below to an  account of MAHER ZAGHA at the Jordan Islamic Bank, each such transfer constituting a separate count:

12

| COUNT | Approximate Date of Deposit into ZAGHA Account in Jordan | Source Bank for HTN Funds | Amount |
|---|---|---|---|
| 3 | 10/25/99 | Key Bank | $20,000 |
| 4 | 11/7/99 | Oneida Savings Bank | $50,000 |
| 5 | 11/25/99 | Oneida Savings Bank | $100,000 |
| 6 | 1/19/00 | Oneida Savings Bank | $100,000 |
| 7 | 2/23/00 | Oneida Savings Bank<br>Key Bank | $200,000<br>$30,000 |
| 8 | 7/5/00 | Oneida Savings Bank | $200,000 |
| 9 | 8/17/00 | Oneida Savings Bank | $200,000 |
| 10 | 11/12/01 | Oneida Savings Bank<br>Key Bank | $200,000<br>$100,000 |

All in violation of Title 18,  United States Code, Section 1956(a)(2)(A) and Section 2.

### THE GRAND JURY FURTHER CHARGES THAT:

### COUNTS 11 - 14

21.   The allegations set out in Counts 1 and 2 are incorporated herein by reference, as if set forth in full.

22.   On or about the dates specified below, within the Northern District of New York and elsewhere, the defendants

RAFIL DHAFIR,
MAHER ZAGHA, and
HELP THE NEEDY ENDOWMENT, INC.

13

transferred and transmitted and caused to be transmitted and transferred funds from a place in the United States to a place outside the United States with the intent to promote the carrying on of specified unlawful activity -- that is, the knowing and willful violation and attempted violation of regulations issued under the International Emergency Economic Powers Act, including the "Iraqi Sanctions Regulations," 31 CFR § 575.201 *et seq.*, by, among other things, transferring, directly and indirectly, funds and other financial and economic resources to one or more persons in the Country of Iraq, contrary to Title 50, United States Code, Section 1705 -- by the following transfers of funds from accounts of HELP THE NEEDY at the banks in the United States listed below to an account of MAHER ZAGHA at the Jordan Islamic Bank, each such transfer constituting a separate count:

| COUNT | Approximate Date of Deposit into ZAGHA Account in Jordan | Source Bank for HTN Funds | Amount |
|-------|-----------------------------------------------------------|---------------------------|--------|
| 11 | 1/15/02 | Oneida Savings Bank (2 checks) | $400,000 |
| 12 | 3/28/02 | Oneida Savings Bank (2 checks) | $400,000 |
| 13 | 9/16/02 | Key Bank | $100,000 |
| 14 | 1/15/03 | Oneida Savings Bank | $200,000 |

All in violation of Title 18, United States Code, Section 1956(a)(2)(A) and Section 2.

14

## **FORFEITURE ALLEGATION**

Pursuant to Title 18, United States Code, Section 982(a)(1), each defendant who is convicted of one or more of the offenses set forth in Counts 2 through 14 shall forfeit to the United States the following property:

All right, title and interest in any and all property involved in each offense in violation of Title 18, United States Code, Section 1956, or conspiracy to commit such offense, for which the defendant is convicted, and all property traceable to such property, including the following:

1.     MONEY JUDGMENT

A sum of money not less that $4,000,000 in United States funds, representing the total amount of funds involved in each money laundering offense, or conspiracy to launder monetary instruments.  If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

2.     BANK ACCOUNTS

a.     All funds on deposit in the Jordan Islamic Bank, account ## 21713 and 21732, under the name MAHER ZAGHA;

b.     all funds on deposit in Oneida Savings Bank, account # 5100425075, under the name HELP THE NEEDY ENDOWMENT, INC.;

15

c.      all funds on deposit in the Key Bank, account # 320310014206, under

the name HELP THE NEEDY.

Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18,

United States Code, Section 982(b), each defendant shall forfeit substitute property, up to the

value of the amount described in paragraph 1 above, if, by any act or omission of the

defendant, the property described in paragraph 1, or any portion thereof, cannot be located

upon the exercise of due diligence; has been transferred, sold to or deposited with a third

party; has been placed beyond the jurisdiction of the court; has been substantially diminished

in value; or has been commingled with other property that cannot be divided without

difficulty.

All in accordance with Title 18, United States Code, Section 982(a)(1) and Rule

32.2(a), Federal Rules of Criminal Procedure.


Dated:  February 19, 2003            _Barclay W. Potter_____
                                     FOREPERSON OF THE GRAND JURY



GLENN T. SUDDABY
United States Attorney


By:    _____
       Michael C. Olmsted
       Stephen C. Green
       Brenda K. Sannes
       Assistant U.S. Attorney
       Bar Roll No. 505858